IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| NICK BRADLEY MENNICK, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. CV08-161-S-BLW |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| J. SMITH; MICHAEL JOHNSON, | ) | |
| KEITH YORDY, LT. GREENLAND, | ) | |
| and SGT. LINK, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On July 23, 2009, Defendants filed a Motion for Summary Judgment in this civil rights case. *See* Docket No. 32. On March 16, 2010, this Court granted in part and denied in part Defendants' motion. *See* Memorandum Decision and Order (Docket No. 37) ("Memorandum Decision"). The Court granted summary judgment to Defendants on Plaintiff's claims (1) that he was denied due process in his review hearings regarding his continued placement in administrative segregation, or "ad-seg," and (2) that Defendants retained him in ad-seg in retaliation for filing civil rights complaints. However, the Court denied summary judgment on Plaintiff's remaining claim that the Defendants' actions in placing and keeping him in ad-seg at IMSI, instead of in protective custody at Idaho Correctional Institution at Orofino ("ICI-O"), violated his Eighth Amendment right against cruel and unusual punishment. *Id.* Finding that there was insufficient evidence in the record to resolve this claim, the Court allowed Defendants to renew their motion for summary judgment and submit additional evidence. Defendants have done so. *See*

Defendants' Renewed Motion for Summary Judgment (Docket No. 39) ("Renewed Motion").

After the Court's Memorandum Decision, Plaintiff filed a "Motion to Submit Additional Information" (Docket No. 38). He also filed an "Affidavit of Plaintiff to Supplement the Record to Dismiss Defendant's Motion for Summary Judgment" (Docket No. 41). Docket No. 41, Plaintiff's affidavit, contained factual allegations and stated that Plaintiff was attaching an 81-page complaint from another civil rights case. *Id.* at 2. Plaintiff submitted an amended complaint containing that 81-page document. *See* Docket No. 42. The Court, recognizing that Plaintiff wished to amend his complaint but had not clearly moved to amend, construed Docket No. 38 as a motion to amend the complaint and Docket No. 41 as an affidavit in support of that motion. So construed, the Court denied the motion. *See* Order, June 29, 2010 (Docket No. 47), at 2-3. The Court ordered Plaintiff to respond to Defendants' Renewed Motion. *Id.* at 4.

Plaintiff then informed the Court that Docket No. 41 was not intended as a affidavit in support of a motion to amend but as his Response to Defendants' Renewed Motion for Summary Judgment ("Plaintiff's Response"), and the Court has reconsidered the document in that light and for that purpose. Defendants chose not to file a reply brief, and the Renewed Motion is now ripe for adjudication.

In its earlier decision, the Court also denied Plaintiff's Motion for a Preliminary Injunction. Memorandum Decision at 12-13. Plaintiff has appealed that denial. *See* Notice of Appeal (Docket No. 49) ("Notice of Appeal"). If this had been a final order,

**MEMORANDUM DECISION AND ORDER - 2**

the Court would no longer have jurisdiction to decide Defendants' Renewed Motion for Summary Judgment. *See United States v. Phelps*, 283 F.3d 1176, 1181 n.5 (9th Cir. 2002). However, because there has not been a final judgment, the proceedings in this Court are not affected by Plaintiff's preliminary injunction appeal and may continue unless the Court orders a stay. 28 U.S.C. § 1292(b); *see also Rockrose, L.L.C. v. First Am. Title & Escrow of Magic Valley, Inc.*, 2006 WL 1697185, *1-2 (D. Idaho June 16, 2006).

Plaintiff has not requested a stay of proceedings pending appeal, and the Court declines to impose one on its own motion. The Court finds that the decisional process would not be significantly aided by oral argument and will therefore decide Defendants' Renewed Motion on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1(d). For the reasons that follow, the Court will grant Defendants' Renewed Motion.

## STANDARD OF LAW

Defendants, as the moving parties, bear the initial burden of demonstrating that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If they do so, the burden shifts to the Plaintiff to produce evidence sufficient to support a jury verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

As the Court explained in its previous Memorandum Decision, prisoners do not

**MEMORANDUM DECISION AND ORDER - 3**

have a constitutional right to any particular housing classification, *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987), and there is no Eighth Amendment violation if the choice of classification involves merely a dispute over "arguably superior alternatives," *Berg v. Kincheloe*, 794 F.2d 457, 462 (9th Cir. 1986). Therefore, to prevail on his Eighth Amendment claim, Plaintiff must show that the safety protections available in ad-seg are so inferior to those in protective custody that he faces a substantial risk of serious harm by remaining in ad-seg. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). He must also show that Defendants have been deliberately indifferent to that risk -- that they knew of and disregarded the risk, or that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually drew the inference. *Id.* at 837.

## MATERIAL FACTS AND ANALYSIS

The material facts are set forth in the Court's previous Memorandum Decision and, other than the new evidence submitted in connection with Defendants' Renewed Motion, will not be discussed at length here.

In support of their renewed motion, Defendants submitted the affidavit of Jeff Zmuda, currently the interim warden at Idaho Maximum Security Institution ("IMSI"). Affidavit of Jeff Zmuda (Docket No. 39-2) ("Zmuda Affidavit") at ¶2. He has worked for the Idaho Department of Correction ("IDOC") for over 20 years and is "thoroughly familiar with the conditions of confinement in all state operated Idaho prisons including all restrictive housing units." *Id.*

Zmuda describes Plaintiff's conditions of confinement in ad-seg at IMSI as "the safest housing assignment he could have in the IDOC prison system." *Id.* at ¶3. Because inmates who are placed in ad-seg generally pose threats to others, ad-seg inmates are "severely restrict[ed]" from having contact with one another. *Id.* at ¶4. Most ad-seg inmates, like Plaintiff, have their own cells. *Id.* at ¶5. According to Zmuda, Plaintiff does not have a cellmate because he was convicted of aggravated assault, he threatened to assault a former cellmate, and he has threatened staff and other inmates on several occasions. *Id.*

Whenever an ad-seg inmate is removed from his cell, he is restrained with handcuffs and escorted by a "police lead." *Id.* at ¶6. Ad-seg inmates are "moved in groups of no more than three with appropriate separation between the individuals in a group," which reduces the risk of violent behavior. *Id.* Ad-seg inmates are separated from other inmates when they exercise and "typically cannot touch each other." *Id.* at ¶7.

Zmuda testifies that if Plaintiff were moved from IMSI ad-seg to protective custody at ICI-O, he would actually be less safe than he is now, for three reasons. First, all protective custody inmates are double-celled, so Plaintiff would lose the single-cell status he currently enjoys. Second, some protective custody inmates (those classified as Level One) are allowed to visit the day room and the recreation yard without being restrained, in handcuffs or otherwise. *Id.* at ¶9. Finally, Zmuda states that the ad-seg unit where Plaintiff currently resides, the J-2 Block, is "one of the quietest units at IMSI." *Id.* at ¶8. Much of the unit houses death-row inmates, who "have proven to be the least

**MEMORANDUM DECISION AND ORDER - 5**

likely to act out" and whose generally good behavior "tends to have a calming effect on the unit." *Id.*

All of this evidence tends to show that protective custody is no safer than ad-seg and might in fact be less safe, given the fact that Plaintiff has a single cell in J-2 Block. Defendants have met their initial burden of demonstrating that the prison's decision not to house Plaintiff in protective custody did not place him at substantial risk of serious harm. The burden now shifts to Plaintiff to come forward with evidence tending to show that his Eighth Amendment rights have been violated.

Plaintiff states that after serving a sentence of 25 days' detention for a "petty write-up" in 2006, he told a non-defendant lieutenant that he would not accept a gang member as a cellmate. Notice of Appeal (Docket No. 49) at 2. After the lieutenant said that Plaintiff did not have the right to choose his cellmate, Plaintiff replied, "I'm just refusing to be celled with gangs." *Id.* He was placed in ad-seg for this refusal and remains there today. Plaintiff's Response to Defendants' First Motion for Summary Judgment (Docket No. 34) at 5.

In his current housing assignment, Plaintiff resides between members of two different gangs, and those gangs have threatened Plaintiff in the past. Plaintiff's Response at 4. He alleges that ever since he arrived at IMSI in September of 2004, prison staff have "wanted [him] assaulted." Plaintiff's Response at 2. According to Plaintiff, prison staff forced him to share a cell with gang members so he would be attacked. *Id.* Unnamed prison officials have also allegedly planned to place Plaintiff back in general

**MEMORANDUM DECISION AND ORDER - 6**

population so that the gangs will attack him. *Id.* at 3. Plaintiff does not dispute that he is single-celled and thus does not have physical contact with the gang members who reside in ad-seg.

Plaintiff also claims that in two-and-a-half years, he has only been able to go outside for exercise five or six times. *Id.* at 3. He does not state that any Defendant forbade him to exercise; rather, it appears Plaintiff has chosen not to do so out of fear of being assaulted. *Id.* According to Plaintiff, the outside exercise "cages" are like dog kennels, have holes as "big as school fences," and allow gang members and general population inmates to spit and to throw urine and feces on inmates whom they do not like.[1] *Id.* at 4. And even though ad-seg inmates are handcuffed and escorted when they leave their cells, "[i]nmates have also been known to slip out of their cuffs and assault someone" by kicking, biting, or head-butting. *Id.* at 5. The only allegation Plaintiff makes regarding the safety protections provided in the protective custody unit at ICI-O is that "[p]rotective custody is a lot safer than segregation." *Id.*

Plaintiff's allegations do not raise a genuine issue of material fact regarding whether he is in substantial risk of serious harm. Although Defendants do not dispute that gang members have threatened Plaintiff, or that he reported these threats to prison authorities, Plaintiff has failed to rebut Defendants' evidence that the safety protections in ad-seg are constitutionally sufficient: he is single-celled with little to no physical contact

---

[1] Plaintiff has not brought a prison conditions claim based on an inability to exercise or on the condition of the exercise cages.

**MEMORANDUM DECISION AND ORDER - 7**

with other inmates, the ad-seg inmates are restrained and securely escorted when removed from their cells, and J-2 Block is one of the quietest housing units in the prison. That an inmate might occasionally break away from prison staff and become violent does not change the analysis. Plaintiff has to show he is at *substantial* risk, not merely *possible* risk.

Although Plaintiff takes issue with his housing classification, he generally refuses to attend his periodic housing classification review hearings. *See* Memorandum Decision at 8-9. He is concerned that if he attends those hearings, he could be placed back in general population. But Plaintiff cannot create a claim that he is in a dangerous housing classification by failing to participate in the hearings where prison officials determine his housing classification. As the United States Supreme Court has repeatedly stressed, courts are not in the business of managing the day-to-day affairs of prison officials, and those officials' decisions are entitled to substantial deference. *Lewis v. Casey*, 518 U.S. 343, 387 n.8 (1996); *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Prison officials have determined that Plaintiff is not appropriately housed in protective custody but should instead be placed in ad-seg. Plaintiff's argument with this decision is nothing more than a dispute between "arguably superior alternatives," *Berg*, 794 F.2d at 462, and is therefore not an actionable constitutional claim.

Because all of Plaintiff's claims have now been adjudicated in Defendants' favor, the Court will dismiss this case with prejudice.

**MEMORANDUM DECISION AND ORDER - 8**

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Renewed Motion for Summary Judgment (Docket No. 39) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's case is DISMISSED with prejudice.



DATED: **August 10, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 9**